# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| JAMES L. NELSON,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of Social<br>Security,**<br><br>        Defendant. | **CV 12-06-BLG-RFC-CSO**<br><br>**<u>FINDINGS AND<br>RECOMMENDATIONS<br>OF UNITED STATES<br>MAGISTRATE JUDGE</u>** |

Plaintiff James L. Nelson ("Nelson") filed this action seeking judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). Chief Judge Cebull referred this case to the undersigned for all pretrial proceedings. *Court Doc. 7.*

Now pending are the parties' cross-motions for summary judgment. *Court Docs. 11* (Nelson's motion) and *14* (Commissioner's motion). For the reasons stated below, the Court recommends that Nelson's motion be granted, the Commissioner's motion be denied, and the ALJ's decision denying benefits be reversed.

## I.  PROCEDURAL BACKGROUND

Nelson filed his benefits applications on January 2, 2009, alleging that he has been unable to work since November 30, 2008. *Tr. 220-28.*[1] He alleged he has been unable to work due to "congestive heart failure, COPD, degenerative disc disease, depression, kidney stones, high blood pressure, dizziness, knee problems, acid reflux and a hyperventilation disorder." *Tr. at 286.*

The Social Security Administration ("SSA") denied Nelson's applications initially and upon reconsideration. *Tr. at 143-51.* On March, 17, 2010, an Administrative Law Judge ("ALJ") held a hearing. *Tr. at 61-135.* On May 26, 2010, the ALJ issued a written decision

---

[1]Nelson's SSI application does not appear to be in the record, but it is referenced in other documents, including the Social Security Administration's Notice of Disapproved Claim. *Tr. at 143-45.*

denying Nelson's claims. *Tr. at 18-33.* On November 29, 2011, after the Appeals Council denied Nelson's request for review, the ALJ's decision became final for purposes of judicial review. *Tr. at 1-4*; 20 C.F.R. §§ 404.981, 416.1481 (2011). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's

conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national

economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to

perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   THE ALJ's OPINION

The ALJ followed the five-step sequential evaluation process in considering Nelson's claims. First, the ALJ found that Nelson had not engaged in substantial gainful activity since his alleged onset date of November 26, 2008. *Tr. at 20.*

Second, the ALJ found that Nelson has the following severe impairments: "Disorders of the spine, depression, post-traumatic stress disorder (PTSD), and history of heart disease[.]" *Id.*

Third, the ALJ found that Nelson does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. *Tr. at 21*.

Fourth, the ALJ found that Nelson has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is limited to jobs which provide the opportunity to alternate sit/stand/walk positions. The claimant can walk up to 2 blocks at a time; sit for 30 minutes to 1 hour at a time; and stand for 45 minutes to 1 hour at a time. He is limited to lifting no more than 10 pounds; and can kneel only seldom. He is not able to climb ladders, ropes or scaffolds and cannot crawl. He is able to perform other postural activities such as balancing, stooping, or crouching occasionally. He must avoid concentrated exposure to extreme cold, vibration, and to rough or uneven surfaces that would cause jarring to the spine. He is unable to perform jobs which require repetitive use of gross or fine motor skills. He must avoid positions which would require him to deal with either large numbers of people or constant streams of people. This claimant is further limited to work which does not require dealing with large numbers of co-workers or supervisors; and the associated distractions inherent in dealing with large groups of co-workers. He is unable to perform jobs requiring high constant focus throughout an 8 hour shift; and jobs with a high constant stress component.

*Tr. at 23-24*.

The ALJ also found that Nelson is unable to perform his past

relevant work as a truck driver, heavy equipment operator, and corrections officer. *Tr. at 31.* The ALJ found that Nelson's past jobs required Nelson to perform at exertional levels which exceed his current RFC. *Id.*

Fifth, the ALJ found that Nelson could perform sedentary, unskilled jobs that exist in significant numbers in the national economy in light of his age (47 years old at the time of his alleged onset date, which is defined under SSA regulations as a younger individual), education (at least high school), work experience, and RFC. *Tr. at 31-32.* Thus, the ALJ found that Nelson was not disabled. *Tr. at 32-33.*

## V.  PARTIES' ARGUMENTS

Nelson argues that the ALJ erred in three principal ways: (1) by ignoring or failing to properly consider the opinions of multiple treating physicians and mental health care providers along with their objective test results; (2) by improperly discrediting Nelson's testimony; and (3) by failing to rely on the only hypothetical question posed to the vocational expert that included all of Nelson's limitations. *Brief in Support of Pltf's Mtn. for Summary Judgment (Court Doc. 12) at 11-37.*

Specifically, Nelson contends that the ALJ ignored or failed to properly consider: (1) the opinion of treating physician Catherine Donaldson, *id. at 11, 13, 17-18, 22*; (2) the opinion of treating physician George Howell, *id. at 11-13, 15-16, 18, 20-21*; (3) the opinion of treating physician Thomas Trotsky, *id. at 12, 18-19*; (4) the opinion of Joseph Hegy, *id. at 24;* (5) the December 11, 2008 MRI of Nelson's lumbar spine; *id. at 21;* (6) Nelson's total left knee replacement *id.*; (7) the June 25, 2010 MRI of Nelson's cervical and lumbar spine and the June 18, 2010 radiographs of Nelson's cervical spine, *id. at 24;* and (8) the opinions of mental health care providers Eleanor Lavin, Catherine Wilson, NP, Janifried Kremmerer, NP, Denise Heitler, LCSW, Frank von Bannisseht ("von Bannisseht"), LCPC-A, and Byron Gale ("Gale"), MSW, ACSW, BCD, *id. at 25-32*.

Respecting the ALJ's credibility determination, Nelson argues that the ALJ erred in failing "to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [Nelson's] claim of disability." *Id. at 32-36.* Nelson argues that his description of his activities of daily

-9-

living is consistent with his physical and mental limitations, inconsistent with the ability to perform substantial gainful activity, and consistent with the opinions of his treating physicians and counselors and with the medical records. *Id. at 34.* He argues that there is no evidence that his activities of daily living are of a type transferrable to a work setting or that he engages in them for a substantial part of his day. *Id. at 35.*

Finally, Nelson argues that review of the vocational expert's testimony shows that "[t]he only hypothetical which incorporated all limitations, including those conceded by the ALJ as credible as described by [Nelson], fully supported by the objective medical evidence and treatment history of the mental health care providers, found these limitations would preclude full-time work." *Id. at 37.*

In response, the Commissioner first argues that the ALJ properly considered the evidence. The Commissioner argues: (1) "[t]he ALJ reasonably evaluated the medical and other source opinions that were in the record before him[,]" *Deft's Br. (Court Doc. 15) at 8-16*; (2) the opinion of Dr. Catherine Donaldson and the notes of Eleanor [Lavin],

Janifried Kremmerer, and Catherine Wilson could not be considered by the ALJ because they were not part of the record at the time of the ALJ's decision, *id. at 8-9*; (3) the ALJ property considered and discounted Dr. Trotsky's opinion because it is contradicted by other medical opinions and because it is not well-supported, *id. at 9-12*; (4) the ALJ properly discounted Dr. Howell's opinions because Dr. Howell "did not identify specific functional abilities, but instead addressed the ultimate issue of disability, which is reserved to the Commissioner[,]" *id. at 13*; (5) the ALJ properly discounted Gale's opinion because he is not an acceptable medical source and because his opinion lacked evidentiary support, *id. at 14-15;* and (6) the ALJ did not need to consider the opinion of von Bannisseht as "[von Bannisseht] did not offer any opinions about [Nelson's] functional abilities[,]" *id. at 16.*

Second, the Commissioner argues that the ALJ reasonably evaluated the credibility of Nelson's statements. *Id. at 16-20.* The Commissioner argues that the ALJ: (1) observed that "care providers noted an indication that [Nelson] might exaggerate the degree and intensity of his symptoms for secondary gain," *id. at 18*; (2) found

"inconsistencies in [Nelson's] statements" about his military record, time spent with friends, and his participation in a ham radio club, *id. at 18-19*; (3) "reasonably found that [Nelson's] allegations of disabling limitations were belied by his activities, which included handling his own self-care, preparing simple meals, washing dishes, sweeping, using a computer, operating a ham radio, driving, shopping, visiting friends, attending 'get-togethers' at his apartment complex, and participating in a ham radio club[,]" *id. at 19*; and (4) found Nelson's "impairments responded to only conservative treatment[,]" *id. at 20*.

Third, the Commissioner argues that the ALJ properly questioned the vocational expert by posing a hypothetical that contained all of Nelson's credible limitations. He argues that the hypothetical relied upon by the ALJ was consistent with the ALJ's residual functional capacity finding. *Id. at 21*.

Fourth, the Commissioner argues that if the Court finds that the decision denying Nelson's claims is not supported by substantial evidence, the Court should remand for further administrative proceedings rather than reverse for an award of benefits. *Id. at 21-23*.

Finally, the Commissioner argues that this case should not be remanded based on the additional evidence submitted after the ALJ's decision. *Id. at 24-32.* The Commissioner argues: (1) "[a]dditional evidence submitted to the Appeals Council after the ALJ's decision should be considered under only sentence six of 42 U.S.C. § 405(g)[,]" *id. at 24-30*; (2) the additional evidence "is not material to the question of whether [Nelson] was disabled on or before May 26, 2010[,]" *id. at 30-32*; and (3) Nelson has not shown good cause for failing to submit the limited additional evidence that pre-dates the ALJ's decision, *id. at 32.*

In reply, Nelson argues that: (1) he did not waive his right to sentence six remand, *Nelson's Reply Br. (Court Doc. 17) at 2*; (2) Dr. Trotsky's opinion was not contradicted by other physicians, *id. at 3-4*; (3) Dr. Trotsky had access to Nelson's medical records prior to September 18, 2009, and as such his opinion should not be discounted for only examining Nelson once, *id. at 4-7*; (4) Dr. Howell's opinion cannot be discounted as he never authorized Nelson to return to full time work and noted that Nelson "would never return to gainful employment[,]" *id. at 7-8*; (5) Gale's opinion cannot be discounted

because it was not contradicted by other physicians and mental health testimony at the hearing confirms Gale's findings, *id. at 10*; and (6) the Commissioner "fails to provide the Court with evidence of specific facts in the records which demonstrate [Nelson] was less limited than he claimed[,]" *id. at 10-12*.

## VI.  DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that: (1) the Commissioner's decision is not based on substantial evidence in the record; (2) the ALJ erred in rejecting the opinions of Dr. Howell and Dr. Trotsky; (3) the ALJ erred in evaluating Nelson's credibility; and (4) substantial evidence supports a conclusion that Nelson was incapable of performing substantial gainful activity during the relevant time period.  Thus, the Court recommends that the Commissioner's decision be reversed and that the matter be remanded for an award of benefits.

As an initial matter, although the parties raise multiple arguments summarized above, the Court finds dispositive the ALJ's improper rejection of the opinions of Nelson's treating physicians, Dr. Howell and Dr. Trotsky, and his inadequately supported determination that Nelson lacked credibility respecting his functional limitations. These errors render the ALJ's decision erroneous and, coupled with substantial evidence of Nelson's inability to perform substantial gainful activity on a sustained basis, compel the conclusion that Nelson is disabled under the Act. In reaching this conclusion, the Court finds it unnecessary to address the parties' other arguments.

## A. Assessment of Opinions of Dr. Howell and Dr. Trotsky

First, a treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995). An examining physician's opinion, in turn, "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is

supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).

To discount the controverted opinion of a treating physician, the ALJ must provide " 'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings or is based on the same information used by the treating physician. *Andrews*, 53 F.3d at 1041. The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, respecting Dr. Howell, the ALJ described in his written decision Nelson's medical records during his course of care and treatment with Dr. Howell.  Such care began on November 20, 2008, and included: (1) a November 21, 2008 cervical spine MRI that revealed "degenerative disc disease and spondylosis at the levels from C2 to C7[,] [b]ulging annulus osteophyte complex ... from C2-3 through C6-7[,] [r]ight foraminal narrowing ... at C2-3[,] and right foraminal stenosis and narrowing ... at C3-4, *Tr. at 25*; (2) COPD, *id.*; (3) a December 11, 2008 lumbar spine MRI that revealed "degenerative signal ... at L3-4 and L4-5 [and at] L4-5 bulging annulus and endplate spurs ... but without significant canal stenosis[,] [and] [a]t L5-S1, bulging annulus and endplate spurs ... to result in bilateral foraminal stenosis, *id.*; (4) on January 5, 2009, complaints of chronic neck and low back pain with neuropathy of the left leg, *id.*; and (5) more monthly care in February, March, April, and May of 2009 for neck and low back pain, treatment for type 2 diabetes, and ultrasound testing that

"detected an enlarged liver 'suggesting chronic hepatocellular disease' but [that] was otherwise described as 'grossly unremarkable[,]'" *id.* at *26.* Dr. Howell's care included x-rays, GI studies and MRIs. *Id.* at 28.

The ALJ noted that Nelson's most frequent primary care provider was Dr. Howell, with whom he treated for almost a year. *Id.* In deciding to afford Dr. Howell's opinion "limited weight," the ALJ offered three reasons. First, he explained that:

> [f]ollowing his early examinations of [Nelson], Dr. Howell advised that [Nelson] could continue to work at the sedentary exertional level, with some postural limitations, but should not lift more than 25 pounds. However, following [Nelson's] announcement that he would be leaving his practice and moving to the VA [for medical care], Dr. Howell drafted a letter to [Nelson's] representative at the time in which he opined that [Nelson] was unable to work. In fact, when the claimant first visited Dr. Howell, he was still working.

*Id.* Second, the ALJ noted that Dr. Howell "never referred [Nelson] to an orthopedic specialist for his back problems, ... [and Nelson's] impairments ... included conditions which the record shows to be controlled effectively with medication, and conditions which are no longer active medical concerns." *Id.* Third, the ALJ observed that "the ultimate determination of disability in Social Security disability cases

is reserved to the Commissioner under the Regulations." *Id*.

The Court concludes that the ALJ failed to provide the requisite " 'specific and legitimate reasons' supported by substantial evidence in the record" in accordance with Ninth Circuit authority. *Molina*, 674 F.3d at 1111. First, in this Court's opinion, the ALJ oversimplifies Dr. Howell's opinion respecting Nelson's ability to work.

The ALJ stated that Dr. Howell advised the claimant that he "could continue to work at the sedentary exertional level....", citing Exhibit 5F, pages 7-8 (*Tr. at 428-29*). What that record actually states is the following:

> The patient returns today (12-01-08). He obviously is dyspneic at rest and breathless when he tries to speak. He also had a copy of report from his employer wanting to know about his ability to work. I will need to deal with that at a later date. However, the patient obviously cannot lift and carry or drag 50-100 pounds a significant number of times during the day. He should not probably lifting (*sic*) over 25 pounds and very infrequently. We will continue the patient's medications and have him restrict his activities here until we get a better hand on how he is responding to his current medications.

*Id.*

On January 5, 2009, Dr. Howell saw Nelson and noted that he was having to take extra medication because of the severity of his pain,

and that he was having "difficulty simply ambulating and moving about due to, particularly, the low back pain." *Id. at 424.* On January 14, 2009, Dr. Howell sent a letter to the Montana Department of Public Health and Human Services (DPHHS), summarizing Nelson's various diseases and stating: "His anticipated prognosis is continuing progressive deterioration even with appropriate health care. ...[H]e will not be able to perform any more than probably sedentary to modest ambulatory activities. He is capable of minimal amount (*sic*) of repeated lifting." *Id. at 422.* Dr. Howell did not specifically state therein that Nelson was capable of performing substantial gainful employment, only that he would not be able to perform any more than sedentary or modest ambulatory "activities," and noted that his prognosis was continuing progressive deterioration.

On May 14, 2009, Dr. Howell again wrote to DPHHS and, after again summarizing Nelson's diseases, opined: "Mr. Nelson is not qualified for gainful employment currently with likelihood of no significant improvement or recovery that would allow for future gainful employment." *Tr. at 477.*

Dr. Howell saw Nelson on October 2, 2009, and noted that his pain "still runs about 7 or 8 during the day even though he is taking his oxycodone 4 times a day regularly." *Tr. at 596.* Dr. Howell's office note further notes: "Due to medical cost, the patient scheduled his first visit with Dr. Trotsky with the VA Center here in Miles City. He plans to change to the VA for his ongoing care." *Id.* In a letter written the same day, Dr. Howell repeated his opinion from four months earlier that Nelson would not ever return to a health status for gainful employment. Dr. Howell's letter to Nelson's representative states:

> Mr. James Nelson is a 48 year-old male who suffers from multiple medical/health conditions including the following:
>
> 1) Hypertension
>
> 2) Hypercholesterolemia
>
> 3) Hypertriglyceridemia
>
> 4) Chronic hepatocellular disease
>
> 5) Chronic severe, degenerative joint disease of his cervical and lumbrosacral spine with chronic daily pain of moderate to severe degree
>
> 6) Diabetes mellitus type 2
>
> 7) Hyperuricemia

8) Psychological disorders: anxiety, depression, insomnia

9) Coranary (sic) artery disease; post bypass graft February 2006

Having attended Mr. Nelson since November of 2008, it is my medical opinion that Mr. Nelson will not ever return to a health status for gainful employment. His health and financial status is such that he is seeking care through the local Veterans Medical Clinic in Miles City, Montana, for ongoing medical care.

*Tr. at 595.*

In light of Dr. Howell's rather extensive course of treatment and care of Nelson over a period of 11 months in which he observed and documented the constellation of medical disorders listed above, it was error for the ALJ to afford Dr. Howell's opinion "limited weight" for the reasons he provided. It is not inconsistent, as the ALJ appears to have concluded, for a treating physician to render an opinion early in a course of treatment that a patient is capable of no more than sedentary activities and later, after a period of several months, render an opinion further limiting the patient's functional limitations as the patient's condition continues to deteriorate. Indeed, one would expect a treating physician to do so, particularly in situations where, as here, the patient has conditions such as pervasive degenerative disc disease that have

not improved over time.

Second, as noted, the ALJ next gave Dr. Howell's opinion limited weight because Dr. Howell "never referred [Nelson] to an orthopedic specialist for his back problems, ... [and Nelson's] impairments ... included conditions which the record shows to be controlled effectively with medication, and conditions which are no longer active medical concerns." *Tr. at 28.* In this Court's opinion, the ALJ's observation that the treating physician failed to refer the patient to a specialist is irrelevant to the issue of whether the treating physician's opinion is worthy of greater weight. Dr. Howell had before him both radiologist-prepared cervical and lumbar spine MRI reports indicating widespread degenerative disc disease in Nelson's neck and back. Dr. Howell's notes reflect that he was treating Nelson with multiple medications, including some for pain control. It is unclear how Dr. Howell's failure to refer Nelson to an orthopedic specialist would have altered his opinion respecting Nelson's functional limitations. Neither of the non-examining physicians upon whom the ALJ accorded "great weight" was an orthopedic specialist. *Tr. at 29 (*ALJ noting that Dr. Mitgang is a

neurologist and Dr. Hernandez is a general practitioner).

Similarly, that some of Nelson's conditions improved with medications and some were "no longer active medical concerns" misses the point. Some conditions, according to Dr. Howell, did not respond well to medications, such as chronic pain from neck and back problems, and some conditions remained "active medical concerns." The ALJ's reliance on these observations as a basis for affording Dr. Howell's opinion limited weight was error.

Third, the ALJ is correct in noting that the ultimate determination of disability is a decision reserved to the Commissioner. 20 C.F.R. § 404.1527(d) and 426.927(d). This basis alone, however, is insufficient to permit the ALJ to give Nelson's treating physician's opinion limited weight, especially in light of this Court's rejection of his other offered bases for doing so.

Finally, based on the evidence already described above and in the ALJ's written decision, the Court concludes that Dr. Howell's opinion is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ did not

provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Howell's opinion. In sum, the ALJ erred in improperly crediting Dr. Howell's opinion.

As the ALJ notes, Dr. Trotsky became Nelson's next treating provider through the VA. *Tr. at 28.* Dr. Trotsky opined, *inter alia,* that Nelson could not do a full time competitive job that required activity on a sustained basis. *Tr. at 583.* Dr. Trotsky believed that his patient was not a malingerer. *Id.* The ALJ placed "very limited weight" on Dr. Trotsky's opinions in part because he provided a medical source statement "after only 2 visits." *Id.* But the non-examining experts upon whom the ALJ placed great weight did not examine Nelson at all. The ALJ also rejected Dr. Trotsky's statement that he had been unable to completely relieve the claimant's pain, the ALJ stating this was "not surprising, after this single examination...." *Id. at 29.* The ALJ failed to note, however, that Dr. Trotsky's observations were largely consistent with Dr. Howell's previous observations over the course of nearly one year of treating Nelson. An ALJ must assess a treating physician's opinion in light of "the record as a whole." *Aranda*

*v. Commissioner*, 405 Fed. Appx. 139, 141 (9th Cir. 2010) (finding ALJ failed to provided requisite specific and legitimate reasons for rejection opinion of treating physician) (*citing Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)).  The ALJ also gave Dr. Trotsky's opinions very limited weight because of his "conclusory finding" that the symptoms and limitations applied since 1984.  *Id.*  But the essential question is whether Nelson was disabled at any time during the relevant period.  For these reasons, the ALJ also failed to give specific and legitimate reasons, supported by substantial evidence in the record, for according Dr. Trotsky's opinions "very limited weight."

### B. <u>Assessment of Nelson's Credibility</u>

Next, the Court concludes that the ALJ erred in determining that Nelson was not fully credible because of his allegedly inconsistent statements regarding military service and family status.  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597,

603-04 (9th Cir. 1989). However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

An ALJ may take the lack of objective medical evidence into consideration when assessing credibility. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004). Inconsistencies in testimony may also be factored in such an assessment. *Orn,* 495 F.3d at 636 (9th Cir. 2007) (citing <u>Fair</u>, 885 F.2d at 603).

The ALJ must also consider the factors set forth in SSR 88-13 including:

A.  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

B.  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

C.  Type, dosage, effectiveness, and adverse side-effects of any pain medication;

D.  Treatment, other than medication, for relief of pain;

E.     Functional restrictions; and

F.     The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; see also 20
C.F.R. § 404.1529(c)(3).

If, after engaging in this analysis, the ALJ rejects a claimant's
subjective testimony of the severity of symptoms, the ALJ must cite
specific, clear, and convincing reasons for doing so.  Smolen, 80 F.3d at
1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

Here, the Court concludes that the ALJ did not give specific,
clear, and convincing reasons for finding that Nelson was not credible
with respect to allegations that he is incapable of all work activity.
With respect to Nelson's statements regarding his military service and
familial status, the ALJ pointed to two allegedly inconsistent
statements made by Nelson at his hearing and relied on a diagnostic
interview set forth in a "Clinical Eligibility Assessment for MHSP
Applicants" dated August 8, 2009.  (*Tr. at 495-500*).  In that evaluation,
the reporter wrote that Nelson "has never married and reports having
no children."  *Tr. at 498*.  He also notes that Nelson experienced

emotional trauma as a Special Forces Medic in combat situations in Vietnam[.]" *Tr. at 499.*  The ALJ determined that these statements were inconsistent with Nelson's hearing testimony where he stated that "he was given a hardship discharge from the Army after he became a single parent ...." *Tr. at 27.*  The ALJ also noted that Nelson testified that he did not serve in Vietnam and was not even in the military until several years after the war there ended.  *Id.*

The Court notes that the evaluation upon which the ALJ relies is itself inconsistent with a Mental Status Evaluation prepared by psychologist Tom Peterson, Ed.D. on August 10, 2009.  *Tr. at 501-09.* In that evaluation, Dr. Peterson reports that "[a]t the age of 19, Mr. Nelson married Claudia, age 20, on December 31, 1980, in Arlington, Virginia.  They were married for 6 years and she gave birth to two children. ... They divorced after 6 years of marriage." *Tr. at 505.*  From this evidence, it appears that the report upon which the ALJ relied in determining that Nelson made inconsistent statements was itself erroneous.   It follows, then, that the ALJ erred in relying upon it to find Nelson not credible.  It is worth noting, too, that this same

inaccurate report is the one the ALJ relied upon in noting that the treatment provider "found some indication that the client might exaggerate the degree and intensity of symptoms for secondary gain." *Tr. at 27*.

Also, Nelson adamantly denied in his hearing testimony that he reported to a treatment provider that he served in combat in Vietnam. Nelson was explaining the error when the ALJ said that he wanted to "shift gears" and moved on to another subject. *See Tr. at 102-03*. It was error for the ALJ to discredit Nelson on the basis of faulty information in the record without affording Nelson a full opportunity to explain the evidence.

The Court notes too that with respect to the critical credibility questions – those pertaining to Nelson's functional limitations – both the experts upon whom the ALJ placed great weight found Nelson credible. Dr. Mitgang wrote: "Claimant's allegations are consistent with the medical evidence. Credibility is not an issue." *Tr. at 455*. Dr. Fernandez wrote: "The claimant's allegations are credible. Claimant impairments are valid and well documented by medical findings." *Tr.*

*at 494.*[2]

For all of these reasons, the Court concludes that the ALJ erred.

## C.    <u>Whether to Remand or Reverse</u>

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an award of benefits is appropriate if there is no useful purpose to be served by further proceedings or if the record is fully developed. *Strauss v. Commissioner*, 635 F.3d 1135, 1138–39 (9th Cir. 2011). The Court should remand for an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and; (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178.

Here, in light of the foregoing discussion, the Court concludes that

---

[2]As the ALJ acknowledged, Dr. Fernandez mistakenly referred to Dr. Howell as "Dr. Horsley."  *Tr. at 486.*  It is also curious that Dr. Fernandez directs: "Let's revise Dr. Mitgang's RFC...."  *Id.*

no useful purpose would be served by further proceedings. The record is fully developed. As noted, the ALJ failed to provide legally sufficient reasons for rejecting opinions of treating physicians that Nelson is incapable of ever returning to a health status that would enable him to perform gainful employment. He also erred in determining that Nelson lacked credibility respecting his functional limitations. No outstanding issues remain to be resolved. Finally, it is clear to this Court that the ALJ would be required to find Nelson disabled if the improperly rejected evidence discussed above were properly credited.

## VII. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's decision denying DIB and SSI be REVERSED, this matter be REMANDED for calculation and payment of benefits, Nelson's motion for summary judgment (*Court Doc. 11*) be GRANTED, and the Commissioner's motion for summary judgment (*Court Doc. 14*) be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States

Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 16th day of July, 2012.

/s/ Carolyn S. Ostby
United States Magistrate Judge